**In re Joseph and Carol BRYCKI, Debtors.**

**Bankruptcy No. 93–32670.**

United States Bankruptcy Court, D. New Jersey.

Dec. 23, 1993.

Peter A. Berman, Matawan, NJ, for debtors.

Joel Ackerman, Zucker, Goldberg, Becker & Ackerman, Maplewood, NJ, for Lumbermens Mortg. Corp.

James Weiss, Haddonfield, NJ, for Household Finance.

Peter J. Broege, Wood, Broege, Neumann & Fischer, Manasquan, NJ, for trustee.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This constitutes the court's decision on a motion by the debtors to reduce the claim of Lumbermens Mortgage Corporation. This court has jurisdiction under 28 U.S.C. §§ 151, 157(b)(1) and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). For the reasons set forth in this opinion, the motion is denied.

### I. FINDINGS OF FACT

The essential facts are undisputed. On May 4, 1993 the debtors, Joseph V. and Carol A. Brycki, filed a voluntary petition under chapter 13 of title 11, United States Code ("Bankruptcy Code" or "Code"). The schedules filed with the debtors' petition listed their residence at 524 Aldrich Road, Howell, NJ ("the property") with a market value of $69,500. The property is subject to two mortgages totaling $95,000. The first mortgage is held by Lumbermens Mortgage Corporation ("Lumbermens") with a scheduled balance of $70,000. The second mortgage is held by Household Finance Corp. with a scheduled balance of $25,000. The plan proposed to cure the arrearages to Lumbermens by payments to the trustee and to resume regular monthly payments "outside the plan" (i.e., these payments would be made by the debtors directly to Lumbermens) as of June 1, 1993.

Lumbermens filed a proof of claim on July 8, 1993 for $73,577.67 plus interest from June

10, 1993 and arrearages of $6,219.18. The claim for arrearages included $1,131.48 interest on the arrearages.

On August 20, 1993, the debtors filed a motion to reduce the claim of Lumbermens. The debtors maintain that because Lumbermens is undersecured it is not entitled to interest on the arrearages to be paid through the plan. Lumbermens opposed the motion. The parties submitted briefs and oral argument was heard on October 26, 1993. The court reserved decision.

## II. CONCLUSIONS OF LAW

■ This motion raises the issue of whether an undersecured mortgagee is entitled to postconfirmation interest on arrearages in chapter 13. The debtors argue that under the holding of *Rake v. Wade*, —— U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), only oversecured creditors are entitled to interest on their claims. Lumbermens argues that a mortgagee is entitled to interest on arrearages throughout the chapter 13 plan whether or not the mortgagee is oversecured. According to Lumbermens, under *Rake v. Wade*, although a mortgagee must be oversecured to receive preconfirmation interest on arrearages pursuant to Code §§ 506(b) and 1322(b)(5), a mortgagee is entitled to receive postconfirmation interest on arrearages whether or not the mortgagee is oversecured. Lumbermens argues that a mortgagee has two claims, one for the underlying debt and one for the arrearages. Lumbermens argues further that if the plan provides for payment of arrearages then under Code § 1325(a)(5)(B)(ii) the mortgagee is entitled to interest through the life of the plan. The court agrees.

The United States Supreme Court granted certiorari in *Rake v. Wade* to resolve a conflict in the circuits as to "whether Chapter 13 debtors who cure a default on an oversecured home mortgage pursuant to § 1322(b)(5) of the Bankruptcy Code, 11 U.S.C. § 1322(b)(5), must pay postpetition interest on the arrearages." *Id.* at ——–——, 113 S.Ct. at 2189–90. The Court first addressed interest on preconfirmation arrearages, explaining that Code § 506(b) allows the holder of an oversecured claim interest on his claim from the petition date through the confirmation date. The court stated that arrearages owed to the mortgagee were part of the mortgagee's claim and, therefore, under Code § 506(b) an oversecured mortgagee is entitled preconfirmation interest on arrearages.

The Court next addressed postconfirmation interest on arrearages. Under Code § 1325(a)(5), which provides for interest on secured claims, the Court held that the plan must pay interest on all allowed secured claims "provided for" by the plan. The Court distinguished the claim for arrearages from the claim for regular monthly payments which become due under the mortgage after the petition date:

> While payments of principal and interest on the underlying debt were simply 'maintained' according to the terms of the mortgage documents during the pendency of petitioners' cases, each plan treated the arrearages as a distinct claim to be paid off within the life of the plan pursuant to repayment schedules established by the plans.

*Rake,* —— U.S. at ——, 113 S.Ct. at 2193. The Court determined that the plan "provided for" the arrearages which were part of the mortgage claims. The Court concluded that "the arrearages, which are a part of the respondent's home mortgage claims, were 'provided for' by the plans, and respondent is entitled to interest on them under § 1325(a)(5)(B)(ii)." *Id.* The Court held that "[u]nder § 1325(a)(5), therefore, respondent is entitled to the present value of the arrearages that were paid off under the terms of the plans as an element of an 'allowed secured claim provided for by the plan.'" *Id.*

Code § 506(b) requires a secured creditor to be oversecured to receive interest, but Code § 1325 does not. Although *Rake* held that a creditor must be oversecured to recover *pre* confirmation interest on arrearages under § 506(b), *Rake* did not rely on § 506(b) to determine if a mortgagee was entitled to interest on arrearages *post* confirmation and, instead, looked to Code § 1325(a)(5). Code § 1325(a)(5) requires that:

Except as provided in subsection (b), the court shall confirm a plan if—

\* \* \* \* \* \*

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder;

11 U.S.C. § 1325(a)(5). Code § 1325(a)(5) does not distinguish between oversecured and undersecured claims.

Following the Supreme Court's decision in *Rake,* the only issue is whether an undersecured mortgagee's claim for arrearages is an "allowed secured claim" entitled to interest under Code § 1325(a)(5). The *Rake* Court found that the claim for arrearages, although distinct from the claim for the underlying debt, was an element of the allowed secured claim. The claim for arrearages is secured by the mortgage whether the mortgagee is undersecured or oversecured and must be paid to effectuate a cure under Code § 1322(b). 11 U.S.C. § 1322(b).

■ This interpretation of Code § 1325(a)(5)(B) and *Rake* is confirmed by *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). *Nobelman* held that a claim secured only by a security interest in the debtor's residence cannot be bifurcated into a secured and unsecured claim in light of Code § 1322(b)(2), even if the value of the residence is less than the amount due on the mortgage. Since a home mortgage is deemed by *Nobelman* to be fully secured for purposes of Code § 1322(b)(2), it must follow that such mortgages are fully secured for purposes of § 1325(a)(5)(B) as well.

Under the Supreme Court's characterization of arrearages as a secured claim distinct from the claim on the underlying debt, the court finds that Lumbermens claim for arrearages is an "allowed secured claim" entitled to interest over the life of the plan pursuant to Code § 1325(a)(5).[1]

The debtors' motion to reduce the claim of Lumbermens is denied. The debtors' chapter 13 plan must provide for the payment of postconfirmation interest on arrearages to Lumbermens. The clerk shall prepare and enter Standard Order 18.

---

1. At least two other courts have also interpreted *Rake* to require the payment of postconfirmation interest on arrearages under Code § 1325(a)(5)(B) whether or not the mortgagee is oversecured or undersecured. *See In re Callahan,* 158 B.R. 898 (Bankr.W.D.N.Y.1993); *In re Casey,* 159 B.R. 963 (Bankr.M.D.Ala.1993).