**In re Joseph J. MORGAN and Kimberly A. Morgan, Debtors.**

**Bankruptcy No. 98–10241DAS.**

United States Bankruptcy Court, E.D. Pennsylvania, Philadelphia Division.

Sept. 30, 1998.

Michael G. Bowen, Michael G. Bowen & Assoc., Doylestown, PA, for debtor.

Thomas I. Puleo, Blue Bell, PA, for Avstar Mortgage Co.

Kenneth B. Polk, Tulsa, OK, for Commercial Financial Services, Inc.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

A. *INTRODUCTION*

Presently in dispute in a contested matter involving an objection ("the Objection") filed by JOSEPH J. MORGAN and KIMBERLY A. MORGAN ("the Debtors") to a secured proof of claim filed by AVSTAR MORTGAGE COMPANY ("Avstar") are (1) whether an undersecured mortgagee is entitled to "interest on arrears;" and (2) whether Avstar, the amount of whose mortgage claim is less than the value of the Debtors' home, should be considered to be undersecured because of the presence of a second mortgage which, when added to Avstar's claim, exceeds the value of the Debtors' home. Although we answer the first question in the negative, our negative answer to the second question as well resolves the dispute at issue in favor of Avstar.

B. *FACTUAL AND PROCEDURAL HISTORY*

The Debtors filed the instant voluntary joint bankruptcy case under Chapter 13 of the Bankruptcy Code on January 7, 1998. A Chapter 13 Plan of Reorganization ("the Plan") was filed on February 11, 1998. Avstar filed a proof of claim ("the Claim") on March 10, 1998, and an objection to confirmation of the Plan on April 21, 1998. The case was first listed for confirmation on July 7, 1998. When the Plan could not be confirmed on that date, the Standing Chapter 13 Trustee, Edward Sparkman, Esquire, filed a Motion to Dismiss this case on the grounds that payments were not all made and the Plan was infeasible ("the TMTD") on July 15, 1998, which was listed with a continued confirmation hearing on August 4, 1998.

On August 3, 1998, the Debtors filed the Objection. In response, the hearings on confirmation and the TMTD were continued to the date of the hearing on the Objection, September 10, 1998.

After the hearing that date on the Objection, we entered an order of September 10,

1998 ("the 9/10 Order"), resolving all aspects of the Objection except that of the imposition of interest on arrears by reducing Avstar's claim by $2463.40 in payments by the Debtors which we found had not been credited by Avstar in computing the Claim. In that order, we gave the parties the opportunity to submit post-trial submissions and for Avstar to re-compute its claim to reduce the interest on arrears due, in light of the $2463.40 reduction to the Claim, on or before September 24, 1998. The hearings on confirmation and the TMTD were relisted on November 5, 1998.

The relevant facts agreed to by the parties were that the Debtors' home is worth $160,-000; Avstar has a total claim of approximately $138,000; and there is a second mortgage against the home in the approximate amount of $27,500. Avstar has, per the 9/10 Order, reduced the amount of interest due on arrears recited on the Claim from $7,907.46 to $7,311.65.

■ The relevant sections of the Bankruptcy Code at issue are 11 U.S.C. §§ 506(b), 1322(b)(5) and 1325(a)(5)(B)(ii). Section 506(b) states that:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Section 1322(b)(5) recites that the contents of a plan of reorganization may

> provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ...

Finally, § 1325(a)(5)(B)(ii) provides that a plan of confirmation shall be confirmed by a bankruptcy court if,

> with respect to each allowed secured claim provided for by the plan, ... the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; ...

The United States Supreme Court held, in *Rake v. Wade*, 508 U.S. 464, 467–72, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), that § 506(b) permits post-petition interest on a oversecured creditor's "claim" for mortgage arrears. In *Rake*, the creditor requested both pre-confirmation and post-confirmation interest on arrearages. Applying §§ 506(b), 1322(b) and 1325(a)(5), the Court held that (1) an oversecured creditor is entitled to obtain pre-confirmation, post-petition interest on post-petition arrears on oversecured claims, pursuant to § 506(b) of the Bankruptcy Code, "to the extent of the value of the collateral" securing the creditor's claim. 508 U.S. at 471, 113 S.Ct. 2187; (2) § 1322(b)(5) allows a debtor to cure a home mortgage default by making payments on the arrearages owed under a Chapter 13 plan of reorganization, and if the mortgagee's claim is oversecured, it is entitled to receive pre-confirmation interest on those arrearages under § 506(b). *Id.* at 472, 113 S.Ct. 2187; and (3) arrearages that are part of a creditor's home mortgage claims are considered to be "provided for" by a debtor's plan of reorganization and the creditor is thus entitled to post-confirmation interest on those arrearages under § 1325(a)(5)(B)(ii). *Id.* at 475, 113 S.Ct. 2187. Thus, the Court held that the oversecured creditor involved in that case was entitled to both pre-confirmation and post-confirmation interest on its arrearages.

Because the Court did not specifically state whether its *Rake* holding as to post-confirmation interest was limited only to oversecured claims, there has been a divergence in the case law on the issue of whether an undersecured mortgagee is also entitled to receive post-confirmation interest on arrearages. One line of cases that holds that *Rake* can be interpreted to permit an award of post-confirmation interest on undersecured claims under § 1325(a)(5), since that Code section does not specifically make any distinction between oversecured and undersecured creditors. *In re Brycki*, 161 B.R. 915, 916–17 (Bankr.D.N.J.1993). In *Brycki*, the court opined that, since *Rake* only held

that an oversecured creditor could recover pre-confirmation interest on arrears owed to it, pursuant to § 506(d), but did not rely on that section as to *post*-confirmation arrears, but instead applied § 1325(a)(5) as to such arrears, interest can be collected on *post*-confirmation arrears whether the claim is undersecured or oversecured. *Id.* at 917. *Accord, In re Hardware,* 189 B.R. 273, 277 (Bankr.E.D.N.Y.1995); *In re Jones,* 168 B.R. 146, 148–49 (Bankr.E.D.Tex.1994); *In re Casey,* 159 B.R. 963 (Bankr.M.D.Ala.1993); and *In re Callahan,* 158 B.R. 898, 903–04 (Bankr. W.D.N.Y.1993).

Another line of cases holds that *Rake* did not grant creditors an absolute right to interest on all of their arrears regardless of whether their claim was secured or unsecured, *In re Arvelo,* 176 B.R. 349, 356 (Bankr.D.N.J.1995), and that the Court, in *Rake,* only dealt with the issue of whether pre-confirmation interest on arrears was payable to oversecured creditors, leaving unanswered whether undersecured creditors are entitled to receive post-petition interest on pre-petition arrears. *In re Johnson,* 203 B.R. 775, 777 (Bankr.M.D.Fla.1996). Further, these courts hold that, if *Rake* meant to hold that post-confirmation interest on arrears could be paid to undersecured mortgagees, it could have expressly so held, and failing to do so, cannot be interpreted to allow same. *See Johnson, supra,* 203 B.R. at 777–78; and *Arvelo, supra,* 176 B.R. at 356. *Arvelo* holds that interest on arrears is payable only to the extent that the creditor's claim is secured. 176 B.R. at 357. *Johnson* holds that *Rake* cannot be read to allow the payment of any post-confirmation interest on pre-petition arrearages. 203 B.R. at 778.

We acknowledged the strength of this reasoning of *Johnson* in *In re Harned,* 166 B.R. 255, 261 (Bankr.E.D.Pa.1994). As we portended that we were inclined to hold in our statements in *Harned,* 8 COLLIER ON BANKRUPTCY, ¶ 1322.09[4][b], at 1322–34 (15TH ed. rev.1998), thusly expresses agreement with this reasoning:

In a case in which a chapter 13 plan provides for a cure of a default under section 1322(b)(5), and the agreement was entered into on or before October 22, 1994,

an oversecured creditor is permitted to demand that section 506(b) interest be added to its claim in the period prior confirmation. The creditor may successfully object, under section 1325(a)(5), to confirmation of a plan that does not provide for interest on arrears during the period after confirmation. However, a creditor is not entitled to interest to the extent the claim, or the arrearage being cured, is unsecured or undersecured.[36]

---

36. *In re Johnson,* 203 B.R. 775 (Bankr. M.D.Fla.1996); *Matter of Arvelo,* 32 C.B.C.2d 1250, 176 B.R. 349 (Bankr.D.N.J.1995) (section 1325(a)(5), relied on by the Supreme Court in *Rake v. Wade,* provides for present value interest only on an allowed secured claim).

We agree with the reasoning of Collier and the application of that reasoning by the *Johnson* court.

Thus, if Avstar's claim were undersecured, we would hold that no interest on arrears would be collectible by it. However, the Claim clearly is not undersecured under the facts stated. Section 506(b) of the Bankruptcy Code states that "[t]o the extent that *an allowed secured claim* is secured by property the value of which . . . is greater than the amount of such claim, *there shall be allowed to the holder of such claim,* interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose" (emphasis added). There is no indication in § 506(b) that the amount of all of the secured claims against the secured property at issue should be added, and if the value of the property exceeds the amount of all of the secured claim, then, and only then, can a creditor be deemed entitled to interest and reasonable fees, costs, and charges. The Debtor appears to have confused the concepts pertinent to § 506(b) with those pertinent to 11 U.S.C. § 362(d)(2)(A), which determine whether a debtor has "equity in . . . property," by consideration of all secured claims against that property. *Compare In re Indian Palms Associates, Ltd.,* 61 F.3d 197, 206–09 (3d Cir.1995).

The positioning of the liens at issue against the Debtors's home, combined with the interpretation of *Rake* herein, would result in the

conclusion that the Debtors' *second* mortgagees would not be entitled to receive any post-petition interest on their mortgage arrears because *their* claim is undersecured. However, their status has no effect on the rights of Avstar to obtain interest on arrears in connection with the Claim at issue.

The Debtors have not contested the interest rate utilized by Avstar in computing its claim, as amended. Avstar apparently used the contract rate of 8 7/8 percent. *See Harned, supra,* 166 B.R. at 260–63 (suggesting that a lower rate proven to be the effective "market rate" would most probably be applied).

Avstar's amended claim, filed in accordance with the 9/10 Order, must therefore be sustained. Our accompanying order requires the Debtors to promptly obtain confirmation in conformity therewith or suffer dismissal of their case.

### D. *CONCLUSION*

An order consistent with the foregoing conclusions will be entered.