In re Shelly R. HOOVER and Tracy E. Hoover, Debtors.

No. 00–00617–M.

United States Bankruptcy Court, N.D. Oklahoma.

Oct. 23, 2000.

Jonathan P. Morgan, Tulsa, OK, for debtors.

Brent A. Austin, Edmond, OK, for Conseco.

### MEMORANDUM OPINION

TERRENCE L. MICHAEL, Chief Judge.

THIS MATTER comes before the Court pursuant to the Objection of Conseco Finance Servicing Corporation ("Conseco"), successor in interest to Green Tree Financial Corporation ("Green Tree") to confir-

mation of the Amended Chapter 13 Plan (the "Plan") filed by Shelly R. Hoover and Tracy E. Hoover, Debtors herein ("Debtors"). The parties have chosen to submit this dispute to the Court on briefs. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52, which are made applicable to this contested matter pursuant to Bankruptcy Rule 9014.

### Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b).[1] Reference to the Court of this contested matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(L).

### Findings of Fact

On or about June 20, 1995, Debtors entered into a contract (the "Contract") with Green Tree for the purchase of a 1995 Liberty Wexford Manufactured Home (the "Home"). Under the terms of the Contract, Debtors financed the purchase of the Home through Green Tree. Green Tree was granted a security interest in the Home which it properly perfected. The Contract provided that Debtors were to make 240 payments of $349.81 to Green Tree. The Contract provided for interest at the rate of 10.75% per annum. The Contract also contained the following provision:

LATE CHARGE: If a payment is more than 15 days late, I will be charged $5.00 or 5.00% of the payment whichever is LESS.

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.* (West 2000).

2. In most circumstances, the Court will not treat exhibits attached to a brief as evidence. In this case, however, Debtors have admitted that the statement of facts contained in the brief submitted by Conseco is true. That statement of facts referred to the Contract. The Court thus considers the Contract as

*See Opening Brief of Conseco Finance Service Corporation on Issue of Payment of Interest on Pre–Petition Arrearages, Docket No. 27, Exhibit "A."*[2] The Contract also provides that to the extent Conseco expends monies to purchase insurance upon the Home, Debtors shall repay said sums to Conseco with interest at the contract rate. At some time after its execution, Green Tree assigned all of its right, title and interest in the Contract to Conseco.

Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on February 25, 2000. As of that date, Debtors were in arrears on the payments owed to Conseco in the sum of $3,696.17 (the "Arrearage"). The Arrearage consists of unpaid principal and interest, as well as an unpaid advance of $123.00 for insurance on the Home. *See Claims Docket No. 3.* Debtors filed the Plan on June 9, 2000. *See Docket No. 19.* Under the terms of the Plan, Debtors propose to pay the Arrearage in sixty monthly installments of $60.61, without interest. Conseco has timely filed its objection to the Plan, and contends that Debtors are obligated to repay the Arrearage with interest.[3]

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

### Conclusions of Law

 The parties agree that under the decision of the United States Supreme Court in *Rake v. Wade,* 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) (hereafter "*Wade*"), creditors such as Conseco are

though it were admitted into evidence without objection.

3. Conseco alleged other grounds for objecting to the Plan in its Objection, but chose not to address those arguments in the briefs which it submitted. The Court concludes that the other grounds for objection have either been abandoned or resolved between the parties, and confines its ruling to the issue of interest on the Arrearage.

entitled to interest upon arrearages in mortgage debt paid through a Chapter 13 plan. In *Wade,* the Supreme Court noted that

This case requires us to decide whether Chapter 13 debtors who cure a default on an oversecured home mortgage pursuant to § 1322(b)(5) of the Bankruptcy Code, 11 U.S.C. § 1322(b)(5), must pay postpetition interest on the arrearages. We conclude that the holder of the mortgage is entitled to such interest under §§ 506(b) and 1325(a)(5) of the Code.

*Id.,* 508 U.S. at 465–466, 113 S.Ct. at 2189. In making its decision, the Supreme Court analyzed the interplay between §§ 506 and 1325 of the Code.

Under § 506(b) the holder of an oversecured claim is allowed interest on his claim to the extent of the value of the collateral. Section 506(b) "directs that postpetition interest be paid on all oversecured claims," and, as the parties acknowledge, such interest accrues as part of the allowed claim from the petition date until the confirmation or effective date of the plan. See supra, at 4. The arrearages owed on the mortgages held by respondent are plainly part of respondent's oversecured claims. Under the unqualified terms of § 506(b), therefore, respondent is entitled to preconfirmation interest on these arrearages. Where the statutory language is clear, our " 'sole function ... is to enforce it according to its terms.' " Section 1322(b)(5), on the other hand, states that a Chapter 13 plan may "provide for the curing of any default and the maintenance of payments" on certain claims. While § 1322(b)(5) authorizes a Chapter 13 plan to provide for payments on arrearages to effectuate a cure after the effective date of the plan, nothing in that provision dictates the terms of the cure. In particular, § 1322(b)(5) provides no indication that the allowed amount of the arrearages cured under the plan may not include interest otherwise available as part of the oversecured claim under

§ 506(b). We generally avoid construing one provision in a statute so as to suspend or supersede another provision. To avoid "deny[ing] effect to a part of a statute," we accord " 'significance and effect ... to every word.' ". Construing §§ 506(b) and 1322(b)(5) together, and giving effect to both, we conclude that § 1322(b)(5) authorizes a debtor to cure a default on a home mortgage by making payments on arrearages under a Chapter 13 plan, and that where the mortgagee's claim is oversecured, § 506(b) entitles the mortgagee to preconfirmation interest on such arrearages.

*Id.,* 508 U.S. at 471–472, 113 S.Ct. 2187 (citations omitted). After the Supreme Court decision in *Wade,* courts consistently awarded interest on arrearages owed to creditors with liens upon the debtors' principal residence. *See, e.g., In re Battle,* 164 B.R. 394 (Bankr.M.D.Ga.1994); *In re Brycki,* 161 B.R. 915 (Bankr.D.N.J.1993); *In re Callahan,* 158 B.R. 898 (Bankr. W.D.N.Y.1993).

Shortly after the Supreme Court rendered its decision in *Wade,* Congress passed the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (the "Reform Act"). Section 305 of the Reform Act added § 1322(e) to the Bankruptcy Code, which provides that

Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

§ 1322(e). This section applies with respect to any and all loan agreements entered into after October 22, 1994, the effective date of the Reform Act. *See* Reform Act, § 702(b)(2)(D).

The legislative history of the Reform Act indicates that § 1322(e) was enacted in order to legislatively overrule *Wade.* The

House of Representatives Report provides as follows:

Section 305. Interest on interest.

This section will have the effect of overruling the decision of the Supreme Court in *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). In that case, the Court held that the Bankruptcy Code required that interest be paid on mortgage arrearages paid by debtors curing defaults on their mortgages. Notwithstanding State law, this case has had the effect of providing a windfall to secured creditors at the expense of unsecured creditors by forcing debtors to pay the bulk of their income to satisfy the secured creditors' claims. This had the effect of giving secured creditors interest on interest payments, and interest on the late charges and other fees, even where applicable laws prohibits such interest and even when it was something that was not contemplated by either party in the original transaction. This provision will be applicable prospectively only, i.e., it will be applicable to all future contracts, including transactions that refinance existing contracts. It will limit the secured creditor to the benefit of the initial bargain with no court contrived windfall. It is the Committee's intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred.

H.R.Rep. No. 103–835 at 55 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3364. The Senate Report contains the following statement:

Section 305. Interest on interest.

This section is in response to the recent U.S. Supreme Court decision of *Rake v. Wade* (No. 92–621, decided June 7, 1993). The Court decided that an ov-

ersecured home mortgage lender has the right to receive both preconfirmation and postconfirmation interest on arrearages and other charges in order to be cured under a chapter 13 bankruptcy plan. The court further held that the home mortgage loan must also pay interest to the mortgagee on the arrearages even if the mortgage instruments are silent on the point and such payment is not required under applicable State law. This provision would still allow the collection of interest on the arrearages; however, it dictates that the mortgage instruments contain language specifically to this end, thereby placing the mortgagor on notice. This provision is prospective in its application.

S.Rep. No. 103–168 at 53 (1993). Courts which have considered the issue have concluded that the intent of Congress in passing § 305 of the Reform Act was to legislatively overrule *Wade*. *See, e.g., In re Lake*, 245 B.R. 282, 285 (Bankr.N.D.Ohio 2000); *In re Bumgarner*, 225 B.R. 327 (Bankr.D.S.C.1998); *Wade v. Hatcher*, 208 B.R. 959, 964 n. 7 (10th Cir. BAP 1997) (noting that effect of § 1322(e) is to overrule *Wade*); *In re Nepil*, 206 B.R. 72, 76 (Bankr.D.N.J.1997) ("... the effect of *Rake v. Wade* [citation omitted] was overruled by addition of subsection (e) to § 1322"). The Court concludes that the enactment of § 1322(e) overruled *Wade*.[4]

Having determined that *Wade* has been overruled, the Court must next apply § 1322(e) to the Contract. One of the leading treatises on bankruptcy has noted that

Under section 1322(e), the amount necessary to cure a default is the same amount as would be required to cure if the debtor were not in bankruptcy.

---

**4.** Conseco argues that *Wade* remains good law. Conseco has cited no authority to the Court in support of its position, nor has the Court found any such authority on its own accord. Conseco points to the fact that this Court has confirmed many a plan since the passage of the Reform Act which provided for

the payment of interest on home mortgage arrearages. Although Conseco is correct regarding confirmation of such plans by this Court, the Court respectfully disagrees with its conclusions. This case marks the first time the effect of § 1322(e) has been raised before this Court.

Two conditions must be met before interest or other charges can be required as part of a bankruptcy cure. First, the interest or charges must be required under the original agreement, and second, they cannot be prohibited by state law. In other words, the bankruptcy court will never require interest in excess of that permitted by state law, and will require none unless the agreement provides for interest.

8 Lawrence P. King, *Collier on Bankruptcy,* ¶ 1322.18 (15th ed. rev.2000). The Contract contains no provision for the charging of interest on unpaid installments; instead, Conseco is entitled to a late charge of $5.00 upon each late payment. In addition, Conseco is entitled to interest at the contract rate for any monies which it advances under the terms of the Contract. According to its proof of claim, Conseco has advanced $123.00 for insurance. There is nothing in the laws of the State of Oklahoma which would preclude Conseco from charging interest upon the amounts which it has advanced for insurance premiums. The Court concludes that Conseco is entitled to interest upon the $123.00 which it has advanced, and is not entitled to interest upon that portion of the arrearage which represents unpaid principal and interest.[5] To the extent the same is not included in its proof of claim, Conseco would be entitled to a late charge of $5.00 on each delinquent payment.

### Conclusion

The Plan does not provide for the payment of any interest upon the Arrearage. Under the terms of the Contract, Conseco is entitled to interest on that portion of the Arrearage which represents sums advanced by Conseco; i.e. the $123.00 advance for insurance. Accordingly, the Plan may not be confirmed. Debtors are directed to file an amended plan in accor-

dance with the terms of this Memorandum Opinion within ten (10) days.

A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

### JUDGMENT

THIS MATTER comes before the Court pursuant to the Objection of Conseco Finance Servicing Corporation, successor in interest to Green Tree Financial Corporation to confirmation of the Amended Chapter 13 Plan filed by Shelly R. Hoover and Tracy E. Hoover, Debtors herein. The Court, being fully advised in the premises, for the reasons set forth in the Memorandum Opinion filed concurrently herewith, finds that the Objection of Conseco Finance Servicing Corporation should be sustained.

IT IS THEREFORE ORDERED that the Amended Chapter 13 Plan filed on June 9, 2000, at Docket No. 19, by Shelly R. Hoover and Tracy E. Hoover, Debtors herein, be, and the same hereby is, not confirmed.

IT IS FURTHER ORDERED that Debtors shall file an amended Chapter 13 Plan in this case in accordance with the terms of the Memorandum Opinion on or before November 3, 2000.

IT IS FURTHER ORDERED that if an amended plan is not timely filed, this case shall be dismissed pursuant to 11 U.S.C.A § 1307(c)(3) without further notice or hearing.

IT IS FURTHER ORDERED that, if an amended plan is timely filed, the Court shall issue an order regarding future proceedings in this case.

---

5. In the briefs submitted to the Court, the parties have indicated that the interest rate to be paid to Conseco would not be the subject of dispute in the event the Court awarded any interest on the Arrearage. If those statements are incorrect, the parties are free to raise the issue of an appropriate interest rate in an objection to the amended plan.