**In re Alwin W.G. HARDING, Debtor.**

**No. 01–1–4507–DK.**

United States Bankruptcy Court,
D. Maryland.

Feb. 12, 2002.

Melinda M. Bolling, Washington, DC, for Debtor.

Shoshana Katz Drimer, Baltimore, MD, interested party.

Thomas L. Lackey, Bowie, MD, Chapter 13 Trustee.

## MEMORANDUM OF DECISION

DUNCAN W. KEIR, Bankruptcy Judge.

This case is before the court upon confirmation of the debtor's chapter 13 plan. The plan presents the court with the issue of whether treatment of the secured claim of Industrial Bank (hereafter, the "Bank") requires payment of postpetition interest on prepetition arrearages. The Bank asserts that this treatment is required by *Rake v. Wade,* 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). In *Rake,* the Supreme Court determined that in order to satisfy 11 U.S.C. § 1325(a)(5), treatment under a chapter 13 plan must include "preconfirmation and postconfirmation interest on arrearages paid off under petitioners' plans." *Id.* at 475, 113 S.Ct. 2187.

However, in 1994, Congress passed the Bankruptcy Reform Act of 1994 (hereafter, the "Act"). Section 305(c) of the Act amended 11 U.S.C. § 1322 as it had existed, to include Subsection (e) regarding interest on interest. P.L. 103–894, H.R. 5116, 103 Cong. § 305(c) (1994). This amendment provided that postpetition interest on arrearages would only be required if the underlying agreement allowed for such interest.[1] However, Con-

gress made the new Section applicable only to underlying agreements prospectively.[2] H.R. 5116. *See also, In re Trabal,* 254 B.R. 99 (D.N.J.2000); *In re Mendez,* 255 B.R. 143 (Bankr.D.N.J. 2000); *In re Winton,* 248 B.R. 225 (Bankr.D.Conn.2000); *In re Bagne,* 219 B.R. 272 (Bankr.E.D.Ca.1998); *In re Good,* 207 B.R. 686 (Bankr.D.Idaho 1997); *In re Johnson* 203 B.R. 775 (Bankr.M.D.Fla.1996); *In re Sarkese,* 189 B.R. 531 (Bankr.M.D.Fla.1995); *In re Hardware,* 189 B.R. 273 (Bankr.E.D.N.Y. 1995).

In this case, the parties entered into a Note and Deed of Trust on July 2, 1986. The terms of this agreement provided that payments under the Note would be made on the 30th day of each month beginning on July 30, 1986, with a maturity date of June 30, 1991. The amount of each monthly payment was $3,288.66, and the interest rate was set at 10 percent per annum. On February 3, 1995, the debtor and the Bank entered into a Modification and Extension Agreement (hereafter, the "Modification"). The Modification altered the monthly payment amount to $2,999.83 commencing on March 3, 1995 and continuing on the 3rd day of every month, until the extended maturity date of February 3, 2010. The parties also modified the interest rate of the Note to 8 percent per annum.

The debtor asserts that the Modification constituted an agreement entered into after October 22, 1994, and therefore 11

---

**1.** 11 U.S.C. § 1322(e) provides "[n]otwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."

**2.** Section 702(b)(2)(D) of the Act provides "[t]he amendments made by section 305 shall apply only to agreements entered into after the date of enactment of this act." H.R. 5116, 103 Cong. § 702(b)(2)(D) (1994). *See also,* H.R.Rep. No. 103–835 (1994) ("This provision will be applicable prospectively only...")

U.S.C. § 1322(e) applies. However, the Bank avers that the Modification does not constitute an agreement governed by 11 U.S.C. § 1322(e) of the Bankruptcy Code as made applicable by Section 702(b)(2)(D) of the Act, ergo *Rake v. Wade* controls the issue of post petition interest on prepetition arrearages. Therefore, the real issue before this court is whether the Modification is an agreement to which 11 U.S.C. § 1322(e) applies.

Neither 11 U.S.C. § 1322(e), which modified 11 U.S.C. § 1322 as aforesaid, nor Section 702(b)(2)(D) of the Act, which enacts the prospective application of that modification, define the word "agreement" as used in those statutes. Therefore, neither the language of the Act nor the Bankruptcy Code contains the answer to whether treatment of the secured claim of the Bank requires postpetition payment of interest on prepetition arrearage.

Although the first step of statutory construction is to examine the language of the statute, as the Fourth Circuit has found, "[i]f the language of the statute is unclear, the court may look to the legislative history for guidance in interpreting the statute." *United States of America v. Childress,* 104 F.3d 47, 53 (4th Cir.1996) (citations omitted). House Report No. 103–835, which provides the greatest clarity on this issue, explained that Section 305 of the Act (now codified as 11 U.S.C. § 1322(e)) will be "applicable prospectively only, i.e., it will be applicable to all future contracts, including transactions that *refinance* existing contracts." H.R.Rep. No. 103–835 (1994), U.S.Code Cong. & Admin.News 1994, p. 3340 (emphasis added).

■ In reliance upon the House Report, a number of courts have determined that agreements, to which 11 U.S.C. § 1322(e) is applicable, include refinancings entered into after the effective date of the Act. *See In re Trabal,* 254 B.R. 99 (D.N.J.2000); *In*

*re Landrum,* 267 B.R. 577 (Bankr. S.D.Ohio 2001); *In re Hoover,* 254 B.R. 492 (Bankr.N.D.Okla.2000); *In re Bumgarner,* 225 B.R. 327 (Bankr.D.S.C.1998); *In re Hardware,* 189 B.R. 273, n. 3 (Bankr. E.D.N.Y.1995). Furthermore, this court has located no opinions to the contrary.

This court concurs with the numerous other courts which have determined that refinancings entered into after October 22, 1994, are included in the definition of agreements to which 11 U.S.C. § 1322(e) applies. However, unfortunately, this does not end the inquiry, as the court must next determine whether the transaction in question, the Modification, constitutes a refinancing.

■ Although numerous courts have found that 11 U.S.C. § 1322(e) does apply to refinancings, no court has addressed the definition of refinancing. Furthermore, neither the Bankruptcy Code nor the Act contains a definition of refinancing. Generally, when the court is faced with statutory language which is not defined in an applicable statute, the court should give that term the meaning found in ordinary usage. In so determining, courts have relied on Black's Law Dictionary for the definition of the term. *See National City Bank v. Plechaty (In re Plechaty),* 213 B.R. 119, 125 (6th Cir. BAP 1997) (discussing "extension of credit" as used in § 523(a)) (citations omitted). Black's defines refinancing as "[a]n exchange of an old debt for a new debt, as by negotiating a different interest rate or by repaying the existing loan with money acquired from a new loan." Black's Law Dictionary 530 (pocket ed.1996).

In the instant case, the Modification extended the maturity date, modified the interest rate and altered the amount of the monthly payment of the Deed of Trust

Note. Applying Black's definition to the facts of this case, the court finds that a refinance occurs where, as here, the interest rate and the terms of repayment are altered.[3]

The court, having determined that the Modification is a refinancing as referred to in the Legislative History of the Act, that such refinancing constitutes an "agreement" as set out under Section 702(b)(2)(D) of the Act, and that the Modification was entered into subsequent to enactment, concludes that 11 U.S.C. § 1322(e) applies. Accordingly, the court finds that 11 U.S.C. § 1322(e) and not *Rake v. Wade* controls the Bank's right to interest on the prepetition arrearage as a component of cure of the default.

No evidence has been offered nor assertion made by the Bank that the language of the loan documents, including the Modification, provides a right to interest on the arrearages. Accordingly, the court concludes that the Bank is not entitled to interest on the prepetition arrearage as a part of the cure of the prepetition default contained in debtor's plan. An Order Confirming Plan will be entered.

---

3. The only issue before this court is whether or not the modification agreement, which includes an alteration of the interest rate, and a modification of repayment, constitutes a refinancing. The issue of whether or not a modi-

fication agreement which only extends the maturity date would constitute a refinancing is not before the court and will not be ruled upon.